CASSIDY FORK BOOM & LUMBER CO. v. ROARING CREEK & C. R. CO.

(Circuit Court, N. D. West Virginia. August 28, 1902.)

1. EQUITY—SUFFICIENCY OF ANSWER.
   Various exceptions· to the answers of defendants in a suit in equity considered and overruled.

2. CORPORATIONS—INSOLVENCY PROCEEDINGS—PURCHASE OF CLAIMS.
   A creditor of an insolvent railroad company is not entitled to a discovery in respect to the prices paid for claims against the company by its president, who purchased for a third person having full right to buy the same, unless a conspiracy to defraud stockholders and creditors is first shown, and especially where such claims have been previously considered and allowed by a master.

In Equity. On exceptions to answers.

B. M. Ambler, for plaintiff.
E. D. Talbott, for defendant.

JACKSON, District Judge. This case is now heard upon the exceptions to the answer of Henry C. Terry, E. J. Burwind, and Charles Heebner. As Mr. Terry is the president of the company, and has been for some years, the court will first dispose of the exceptions to his answer, for the reason that the ruling upon the exceptions will sub-

stantially dispose of the exceptions to the answers of the other defendants.

The first exception filed by the plaintiff's counsel to the answer of Mr. Terry is to the answer of paragraph 4 of the bill. It is not necessary for the court to refer to paragraph 4 except to say that the answer of Mr. Terry specifically denies each and every averment of paragraph 4 of said bill, except so far as they are expressly admitted in his answer. Replying to that portion of the bill referring to traffic agreement, he expressly says that there was no traffic agreement. Replying to that part of the bill which states that the $28,000 was made up by a fair average from 1896 of about $10,000 per year, and giving an average of disbursements of about $10,500 per year, as shown by the report, etc., the answer expressly says that the claim is not made up by giving the total receipts as an average and giving the average of disbursements, but is made up from the actual receipts and actual disbursements in connection with the operation of the said railroad, all of which are fairly and honestly stated and accounted for, which appears from an inspection of the master's report, the proofs of which were laid before him and allowed by him, and that the report further shows that there is a large amount due from the receiver, Thomas Fisher, to the defendant Terry. For the reasons assigned, the court overrules exception No. 1 to paragraph 4.

In reference to exception 2 to paragraph 4, in regard to the $150,000 bonds and interest, the court overrules that exception, for it clearly appears from the answer of the defendant Terry how those bonds were acquired, and by whose money they were purchased. It is a question of fact to be determined upon the hearing whether or not the statements in his answer are true. The defendant Terry expressly denies that the bonds were held as collateral for any obligation of the railroad company.

Exception No. 3 to paragraph 4 as to the mechanics' liens, amounting to $3,542.10, is overruled, for the reason that the answer states that they were just items of liens against the railroad company, and were purchased by him as trustee for E. J. Burwind, upon a fair and proper consideration. The question whether or not he paid the face value of those liens is, in the view of the court, not a matter for fair and proper consideration, for the reason that it clearly appears in other proceedings in this case that the railroad company was bankrupt, and was in the hands of a receiver, and its obligations, securities, and judgment liens against it were far below the face value of them. It is not to be presumed, in dealing with a bankrupt, that the purchaser would be expected to pay anything like the face value of its obligations, especially when it appears that the purchaser, Burwind, was in no wise connected or associated with the company. Though a conspiracy and combination is alleged between Burwind and the others, yet the answer denies in strong terms the existence of any such conspiracy or combination.

As to exception No. 4 to the answer, which states that, as to material used for the construction of the railroad, amounting to $12,054.34, the said Terry did not pay as much as $8,000 on account thereof, and the answer does not refer to such allegation, or make any

response in regard thereto, is overruled. The defendant, in his answer, states that the items making up that amount are all fair, just, and at fair prices, and that the claims therefor were purchased by this defendant as trustee for Burwind. A reference to the master's report shows that this claim of $12,054.34 was supported by the evidence of Mr. Terry and Mr. Fisher. The latter had the vouchers therefor, as the court is informed by the master, although it does not appear upon the face of his report. But, if this were not so, Burwind had a right to purchase the $12,054.34 claim for $8,000, if he could get it, unless an allegation of fraud can be established by proofs. If, upon the hearing of the case upon its merits, the allegation of fraud is fully established, then it might be that it would be the duty of the court to more fully investigate the question of the consideration of these various claims purchased by Burwind.

As to exception No. 5 to the answer, in regard to the charges of $63,000 for building the railroad 4⅕ miles, at $15,000 a mile, the answer of the defendant states that the building of the road and the expenditure of the money was authorized by a decree of the court at the price mentioned. This is a matter that has been disposed of by a former order of the court, and the bill here filed cannot be treated as a bill of review reviewing the decree of the court for allowing that claim, even if it was within the time to do so, but the court is of the opinion that the answer is a sufficient reply to that allegation of the bill.

Exception No. 6 of the plaintiff to the answer relates to the book accounts, amounting to $112,572.05, reported by the master in favor of Terry, trustee, includes claims, all of which except about $68,000 were acquired by said Terry not exceeding 50 cents on the dollar, and charges that the said Terry wholly fails to respond to such matter, and has not answered whether or not he acquired such claims at a discount or at the percentage specified. The answer states that the amount of $112,572.05 was just and proper and fair claims against the railroad company, and were purchased fairly from the owners and holders thereof with the moneys of the said Burwind. This exception is overruled, for the reason that the answer states that they were purchased with the moneys of Burwind, and that the claims were just and proper against the railroad company. The defendant Burwind had a right to go into the market and purchase the claims upon such terms as the holders of the claims were willing to accept. These claims, as appears from the master's report, were passed upon by him and allowed, and vouchers were produced before the master, as I learn from him, showing the different items, stating the aggregate sum.

Exceptions Nos. 7, 8, 9, and 10 are covered by the concluding portion of respondent's answer, and therefore are overruled.

Exception No. 11, referring to the interrogatories, are questions all of which have been noticed and passed upon and disposed of in the first six exceptions to this answer, and are fully covered by that portion of the answer to which the first six exceptions apply.

It is apparent to the court that there is no equitable ground for the discovery asked for in this case, unless upon the hearing of this case the evidence should establish a combination and fraud upon the

part of Terry, Burwind, Heebner, and Fisher to sacrifice this property of the railroad company to the detriment of its stockholders and creditors. In addition to this, it is perfectly competent for the plaintiffs to introduce evidence in this case, and to call the defendants to the stand and make them testify, and answer questions independent of the answers.

There is an exception found in the papers to the answer of E. J. Burwind. The court is of the opinion that Mr. Burwind has answered fully, and, inasmuch as he adopts the answer of Mr. Terry in regard to the matters in controversy, and relying upon his answer to the various exceptions, the court is of the opinion to overrule all the exceptions to Mr. Burwind's answer.

There is also an exception to the answer of Thomas Fisher. The court is, of the opinion that the exceptions are not well taken. His answer refers to the answer of the defendant Terry, and says that the facts set forth in the answer of said Terry he believes them to be true, and so avers. He denies all the averments of the fourth paragraph of the said bill, except so far as they are expressly admitted in the answer of Henry C. Terry, trustee. The fact is that the proceedings in this case were pending before the master from time to time for several years past, and it is apparent to the court that little or no interest was manifested by the stockholders, or by the plaintiff in this action, for they did not attend before the master when he was making up his report, and never in any way suggested to the master that they wished to be heard by him in reference to the claims against the railroad company, though every one interested had full notice of the time and taking of the account.

Pending these proceedings before the master, Wamelsdorf, who was general manager of the plaintiff company, and must have known of all matters of interest in which his company was concerned, filed his cross-bill in his own behalf on the 26th day of June, 1897, and he stated in his cross-bill that the only assets held by Henry C. Terry, trustee, are the matters in litigation in this suit,—that is, in the original suit,—and in his capacity as trustee he had no other assets out of which your orator can realize his claims; thus showing a familiarity with the assets in the hands of Terry, trustee. Subsequently Wamelsdorf dismissed his cross-bill on the 12th day of December, 1901. The court must conclude that the company, the plaintiff in this action, as well as the said Wamelsdorf, who was the general manager, was cognizant of the proceedings before the master, and that, if they had any interest in contesting the claims of Burwind, Terry, and the other parties, they should have appeared before the master and have done it.